## Corace, Appellant, *v.* Corace.

Argued June 11, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

236

*Charles D. Coll,* with him *Robert L. Woshner,* for appellant.

*Joseph I. Lewis,* for appellee.

OPINION BY FLOOD, J., September 17, 1964:

This is an appeal from the refusal of a divorce a mensa et thoro. Our reading of the testimony brings us to the same conclusion which was reached by the court below.

1. Many of the matters to which the plaintiff testified consisting of rumors and unverified suspicions of associations with other women, would not, even if believed, furnish grounds for divorce. The only situation testified to specifically related to a woman who had been hired by the husband in connection with the sale of some houses in his business and discharged two weeks later on his wife's demand. As to this woman the plaintiff testified only (1) that she found her with the defendant on adjoining chairs, sitting close together talking, and on cross-examination she conceded that they could very well have been talking about business and (2) that the defendant gave her a $14.12 bottle of perfume when she left his employ. There was no testimony of any association of the defendant with this woman either before or after this brief period.

The plaintiff testified that she found some paper in her husband's wastebasket containing names and ad-

dresses of some other women but nothing further was adduced with regard to them. Since the names were not being preserved by the husband but were found in a wastebasket, his explanation that one name was that of a woman who did some decorating work at his houses and that he did not remember who the others were, but that they were probably prospective tenants, is at least as likely an explanation as the darker conjecture of the wife. Finding lipstick and pancake on his shirts on a few occasions proves little, since the plaintiff conceded that she used such cosmetics. The testimony as to relations with other women was worthless as the basis for a decree of divorce.

2. The cancellation by the defendant of the plaintiff's charge and checking accounts at the end of 1961, and his return of clothing bought by her on credit was explained by him on the ground that business had been bad for some years and her expenditures had been excessive. Within a few years after the marriage, when the parties were still in their twenties, the husband had done so well financially that they were able to move into a fine house on five acres of ground in a good residential area of Pittsburgh. Some years later they acquired another fine home in Florida. They lived more than comfortably and the plaintiff no doubt found it difficult to adjust when her husband's income dropped. Her expenditures in the fall of 1961 remained quite high even after he had asked her to cut down and it was only after this that he cut off her credit and returned some clothing she had bought on credit. It is hard to say that the husband had no justification for this. In any event, though it may to some degree have humiliated her, especially if he criticized her to the personnel at any of the stores, it is not such a course of conduct as would in itself warrant a divorce on the ground of indignities. Nor is it converted into a ground for divorce by his own failure to cut down on some of

his own luxuries as much as he might have. Cancelling her golf club membership while retaining his own is in the same category.

3. The other substantial charges were all denied and the plaintiff produced no important corroboration of her testimony as to such charges. The master who saw and heard the witnesses found that they were not proved and we agree.

The plaintiff accused her husband of frequently coming home late at night in a state of intoxication and also of leaving the house and staying away all night on a number of occasions during the parties' last year together. He denied such drunkenness and like the master, we think his testimony credible. Admittedly, his business often kept him out in the evenings. He golfed several afternoons a week, but so did she. He testified that he left the home for the night only when she started arguments, and only after he had received advice from a marriage counsellor to do this to avoid arguments and fights. His staying out late after his golf game to play gin rummy did not, under the circumstances, rise to the height of indignities and it is doubtful, from her testimony, that his wife so considered them.

The only solid basis for a decree would have been the wife's testimony as to the beatings her husband inflicted upon her, if it were believed. Our examination of the record leads us to conclude that the wife was the aggressor in these episodes and that the husband's retaliation was neither violent nor accompanied by any excessive force beyond what was necessary to fend off her blows. This is not the material out of which a divorce decree can be fashioned.

On the alleged beatings, as well as on other matters, the wife failed to produce corroboration except so far as her husband admitted shaking or pushing or slapping her in fending off her blows or in retaliation

for them. Rita Carpeta testified only to disturbances, without throwing any light upon which party was the aggressor or the degree of violence on the part of each. Her testimony as to the wife's statement to her that he "tried to choke me" does not help in view of the other evidence. Despite the plaintiff's repeated testimony on direct, redirect and cross-examination with respect to her husband's beating and kicking her, she never accused him of choking her or trying to do so either in her bill of particulars or in her testimony. Rita Carpeta's testimony as to black and blue marks was also completely inconclusive on these issues.

There is every indication in the record that the children of the parties could have thrown light on the question as to who started the violent phase of these quarrels, the degree of force the husband used and whether he used force only in repelling her or otherwise. She saw fit not to call either of them. She has the burden of proof and has failed to sustain it.

Order affirmed.